UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
CACHET FINANCIAL SERVICES,
:
                              Plaintiff,                            **COMPLAINT**
:
      -against-                                **DEMAND FOR JURY TRIAL**
:
MYPAYROLLHR, LLC; MICHAEL MANN;      Case No. 1:19-CV-1181 (FJS/CFH)
VALUEWISE CORPORATION; ROSS PERSONNEL
CONSULTANTS INC.; SOUTHWESTERN   :
PAYROLL SERVICES INC.; ESSQUE, INC. (D/B/A
HEUTMAKER BUSINESS ADVISORS); AND DOES :
1-10,
:
                           Defendants.  :
------------------------------------------------------------------X

       Plaintiff Cachet Financial Services ("Cachet"), by and through its attorneys, Loeb & Loeb LLP, as and for its complaint, makes the following allegations against Defendants MyPayrollHR, LLC ("MyPayrollHR"); Michael Mann ("Mann"); numerous companies owned or controlled by Mann [*i.e.,* ValueWise Corporation; Essque, Inc.; Ross Personnel Consultants Inc.; and Southwestern Payroll Services Inc., and Does 1-10 (collectively, the "Mann Entities")]; (MyPayrollHR, Mann, and the Mann Entities are referred to collectively as "Defendants"):

## NATURE OF ACTION

       1.    This case is about a multi-million dollar fraudulent scheme perpetrated by MyPayrollHR, Mann, the Mann Entities, and potentially others, which has not only damaged Cachet, but by its ripple effect, has also disrupted the lives of thousands of people across the country, including many citizens of New York.

       2.    Mann is the CEO of MyPayrollHR, which is a cloud-based payroll processing company that, before September 4, 2019, served numerous employer-clients around the country.

3.  MyPayrollHR was a client of Cachet, and pursuant to their 11-year contractual relationship, MyPayrollHR used Cachet's patented ACH services to move funds electronically from the bank accounts of MyPayrollHR's employer-clients to Cachet's "settlement account," and then from the settlement account to the bank accounts of the employees of those employer-clients.

4.  In or around the end of August or the beginning of September 2019, MyPayrollHR and Mann surreptitiously and fraudulently manipulated Cachet's ACH specifications batch files – the instructions which dictate the direction, timing and flow of funds – to cause over $26 million to be transferred to numerous bank accounts that are, on information and belief, owned or controlled by the Mann and/or the Mann Entities.

5.  Defendants stole the $26 million in two sets of transactions. In the first set of transactions, MyPayrollHR and Mann manipulated the Cachet specifications to *appear to* transfer more than $19 million (the "$19 million")[1] from various accounts controlled by MyPayrollHR and some of the Mann Entities to Cachet's settlement account, and then immediately from Cachet's settlement account to various other accounts owned and controlled by the Mann Entities. However, those funds were never actually deposited into the settlement account.  Notwithstanding the fact that the funds were not in the account and available for ACH transfer, it appeared that they were in the account and Cachet transferred the $19 million to MyPayrollHR and the Mann Entities. When Cachet learned of the fraud and attempted to claw back the money from the various accounts owned and controlled by MyPayroll and the Mann Entities, Cachet received notices from the bank(s) that the accounts had been frozen.

---

[1] The exact amount that Defendants stole from Cachet via entities-to-entities transfer is *more than* $19 million, but for ease of reading, the amount will be referred in this complaint as "the $19 million."

6.  In the second set of transactions, MyPayrollHR and Mann stole more than $7 million (the "$7 million")[2] from MyPayrollHR's employer-clients that should have been used to pay the employer-clients' employees. MyPayrollHR and Mann also manipulated the Cachet specifications to divert those funds to MyPayrollHR's own accounts at Pioneer Bank. Even though the employers' funds did not go to Cachet's settlement account, the manipulation of the batch file caused Cachet's account to automatically be charged with the amount of employees' payroll checks – *i.e.,* the $7 million. Once Cachet learned of the fraud, and the fact that the employers' funds were not credited to Cachet's settlement account, Cachet immediately reversed the direct deposits transmitted to the employees' accounts. But Cachet then decided to make the employees whole – with its own money – even though Cachet was the party defrauded by MyPayrollHR, Mann, and the Mann Entities. Despite the fact that the employers' funds never went to Cachet's settlement account, and instead went to Defendants' accounts, Cachet promptly authorized and instructed its bank to cancel Cachet's reversals of the direct deposits and thus allow its own funds to be distributed to the employees' accounts.

7.  Mann was recently arrested by the FBI, and appeared in this Court on September 23, 2019, before Magistrate Judge Daniel J. Stewart, on charges of bank fraud. Case No. 1:19-MJ-602 (DJS). According to the affidavit submitted by FBI Special Agent Matthew Wabby, Mann, in an interview with the FBI on September 10, 2019, "stated that he wished to accept responsibility for his conduct, and confess to a fraudulent scheme that he had been running for years." Special Agent Wabby also stated the following in his affidavit: "Mann stated that the payroll issue . . . was precipitated by his decision to route MyPayroll's clients' payroll payments to an account at Pioneer instead of directly to Cachet. He did this in order to temporarily reduce

---

[2] The exact amount that Defendants stole from MyPayrollHR's employer-clients is *more than* $7 million, but for ease of reading, the amount will be referred to in this complaint as "the $7 million."

3

the amount of money he owed to Pioneer. When Pioneer froze Mann's accounts, it also (inadvertently) stopped movement of MyPayroll's clients' payroll to Cachet."

8. Defendants' illegal conduct has caused over $26 million of damages to Cachet.

## PARTIES

9. Plaintiff Cachet is a California corporation with its principal place of business in Pasadena, California.

10. Defendant MyPayrollHR, formerly known as Cloud Payroll LLC, is a Delaware limited liability company registered to conduct business in the State of New York with its principal place of business in Clifton Park, New York.

11. Mann is a citizen of New York and resides in Northville, NY. Mann is also the CEO of MyPayrollHR, ValueWise, and Ross Consultants.

12. Defendant ValueWise is a Delaware corporation registered to conduct business in the State of New York with its principal place of business in Clifton Park, New York.

13. Heutmaker Business Advisors ("Heutmaker") is a d/b/a of Essque, Inc., which is a Minnesota corporation with its principal place of business in Bloomington, Minnesota.

14. Ross Personnel Consultants Inc. (d/b/a Ross Consultants) is a Connecticut corporation with its principal place of business in Clifton Park, New York.

15. Southwestern Payroll Services Inc. (d/b/a Southwestern Payroll) is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.

16. The defendants sued as "Does 1 to 10" are the other "Mann Entities," not already identified and named above, to which MyPayrollHR and Mann transferred or caused to be transferred at least some portion of the $19 million and/or the $7 million. While Cachet has identified the d/b/a and bank account numbers for such defendants, it has not yet identified their

complete corporation information. Once Cachet identifies such defendants, Cachet will determine whether to amend the complaint to add such defendants.

17. Cachet is informed and believes, and based thereon alleges, that at all times herein mentioned, each defendant and Doe was the agent, servant and/or employee of each other defendant and Doe, and in connection with the conduct herein alleged, was acting within the course and scope of such agency, and that each Defendant and Doe ratified each and every act, omission and thing done by each and every other Defendant and Doe.

18. Cachet is further informed and believes, and based thereon alleges, that Defendants have formed and engaged in a conspiracy, common enterprise and common course of conduct, the purpose of which was and is to engage in the wrongdoing alleged in this complaint. The conspiracy, common enterprise and common course of conduct continue to the present, and Cachet has suffered damages resulting from Defendants' operation of their conspiracy, common enterprise and common course of conduct.

## JURISDICTION AND VENUE

19. This Court has jurisdiction of this action pursuant to 28 USC § 1332(a)(1) in that this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. Venue is proper in the Northern District of New York for several reasons:

    a. a substantial part of Defendants' illegal conduct occurred in this judicial district that gave rise to Cachet's claims (28 USC § 1391(b)(2));

    b. at least Defendants MyPayrollHR, ValueWise, Ross Consultants, and Mann are subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)); and

c. the corporate defendants ValueWise and Ross Consultants are subject to the Court's personal jurisdiction with respect to this action since it "resides" in the Northern District (28 USC § 1391(d)).

## FACTUAL ALLEGATIONS

21. Cachet is a national financial services company focused on ACH processing and related services for the payroll industry. Cachet contracts with payroll processors, such as MyPayrollHR, to process tens-of-billions of dollars annually in ACH transactions for tens-of-thousands of employers.

22. MyPayrollHR is an outsource payroll processing company that contracts with employers to manage the employers' payroll. MyPayrollHR contracts with Cachet, which provides the capability to move funds electronically via ACH transactions, the mechanism necessary to withdraw funds from the bank accounts of MyPayrollHR's employer-clients and then deposit those funds directly into the bank accounts of the clients' employees.

23. In late-August and/or early-September 2019, unbeknownst to Cachet at the time, MyPayrollHR and Mann illegally and fraudulently manipulated Cachet's specifications batch files to cause over $26 million to be routed to MyPayrollHR and the Mann Entities.

24. MyPayrollHR and Mann manipulated Cachet's specifications batch files in two different ways. First, they fraudulently used Cachet's settlement account for non-payroll purposes in order to steal the $19 million directly from Cachet. More specifically, MyPayrollHR and Mann manipulated Cachet's specifications to make it appear as if the $19 million was being transferred from various entities, including MyPayrollHR, to Cachet's settlement account, and then the same $19 million was being transferred from Cachet's settlement account to other various entities. However, while the $19 million was never actually transferred to Cachet's settlement account, an

identical amount *was* transferred from Cachet's settlement account to accounts owned and controlled by MyPayrollHR and various Mann Entities, which, on information and belief, are maintained at Pioneer Bank, Bank of America, Key Bank, Wells Fargo and Axos Bank (f/k/a Bank of Internet).

25. Second, MyPayrollHR and Mann manipulated Cachet's specifications to steal more than $7 million from its own employer-clients and their employees. Specifically, MyPayrollHR and Mann altered account information in the Cachet specifications so that the $7 million of the employer-clients' funds were deposited not in Cachet's settlement account, but rather in bank accounts owned and controlled by MyPayrollHR and the Mann Entities, which, on information and belief, are maintained at Pioneer Bank, Bank of America, Key Bank, Wells Fargo, and Axos Bank (f/k/a Bank of Internet).

26. Cachet learned for the first time shortly thereafter of the fraud and promptly (a) transmitted digital instructions to the accounts controlled by Defendants to reroute the funds to the settlement account (for both sets of fraudulent transactions generated by Defendants); and (b) authorized its bank to instruct the employees' banks to reverse the unfunded direct deposits that went into the employees' accounts. Cachet is informed and believes that Pioneer Bank, Bank of America, Key Bank, Wells Fargo, and Axos Bank have since frozen some or all of the funds and therefore would not reroute the funds to the Cachet's settlement account.

27. On September 3, 2019, a representative of Cachet called and spoke with a representative of MyPayrollHR and was informed Michael Mann was at Pioneer Bank working on having Pioneer Bank release the funds to Cachet. A representative of Cachet called and spoke with Mann on September 4, 2019. Mann said he would call Cachet back in a few minutes, but

7

18182852.2
234071-10001

never did and then disappeared. MyPayrollHR has since advised its clients that it has ceased operations.

28. Thereafter, Cachet, through its bank, instructed all of the employees' banks to reject the reversals of the direct deposits and thereby allow the direct deposits to remain in the employees' accounts. Cachet thus funded the employees' accounts with its own money.

29. Defendants' unlawful conduct has caused more than $26 million in damages to Cachet, in addition to attorneys' fees and expenses that Cachet has incurred and will incur as a result of the ripple effect of Defendants' actions.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (Against MyPayrollHR)

30. Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

31. Cachet and MyPayrollHR entered into an ACH settlement and processing services agreement, the most recent version of which is dated May 1, 2019 (the "Cachet-MyPayrollHR agreement").

32. Cachet has complied with of its obligations under the Cachet-MyPayrollHR agreement.

33. Pursuant to the Cachet-MyPayrollHR agreement, MyPayrollHR agreed, among other things:

(a) to use Cachet's ACH settlement and processing services only for payroll-related transactions, and not to use Cachet's services for non-payroll-related transactions;

(b) not to use Cachet's ACH settlement and processing services in a way that violates the laws of the United States;

(c) not to allow unauthorized access to Cachet's ACH settlement and processing services;

(d) to provide accurate information in Cachet's specifications batch files;

(e) to pay Cachet for all credit entries directed by MyPayrollHR that were made by Cachet on MyPayrollHR's behalf.

34. MyPayrollHR has breached the Cachet-MyPayrollHR agreement by

(a) using Cachet's ACH settlement and processing services for non-payroll-related transactions by fraudulently moving funds from entities to entities;

(b) violating U.S. law by stealing money from Cachet (using kiting) and from MyPayrollHR's employer-clients;

(c) accessing and using Cachet's ACH settlement and processing services in an unauthorized manner, for non-payroll-related transactions and to steal money;

(d) providing inaccurate information in Cachet's specifications batch files by manipulating the account number from Cachet's settlement account to accounts owned and controlled by Defendants; and

(e) failing to pay Cachet for the more than $26 million of credit entries that were made by Cachet to the bank accounts of the employees of MyPayrollHR's employer-clients and to the bank accounts owned and controlled by MyPayrollHR and the Mann Entities.

35. By reason of MyPayrollHR's wrongful conduct, Cachet has sustained damages in an amount to be determined at trial, but not less than $26 million, plus interest, as well as attorneys' fees (as provided in the Cachet-MyPayrollHR agreement) and any and all expenses incurred by Cachet to address the issues caused by MyPayrollHR's unlawful conduct.

## SECOND CAUSE OF ACTION
### Fraud
### (Against MyPayrollHR and Mann)

36. Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

37. By completing the Cachet specifications batch file, MyPayrollHR and Mann made two sets of representations to Cachet. First, MyPayrollHR and Mann represented that (while Cachet's system was not supposed to be used to move funds from entities to other entities) the $19 million would be transferred from various entities, including MyPayrollHR, to Cachet's settlement account, and that the same $19 million would be transferred from the settlement account to various other entities. Second, MyPayrollHR and Mann represented that MyPayrollHR's employer-clients would deposit the $7 million into Cachet's settlement account and the employees of those employer-clients would be paid the $7 million from Cachet's settlement account.

38. Both sets of representations were false. First, the $19 million was never actually transferred from the various entities to Cachet's settlement account (although $19 million was actually transferred from Cachet's settlement account to various entities). Second, the $7 million of employer-clients' funds were never deposited in Cachet's settlement account, but instead were diverted to accounts owned and controlled by Defendants.

39. MyPayrollHR and Mann, by their manipulation of the Cachet specifications batch files, either knew that their representations were false when they made them, or they made such representations recklessly and without regard for their truth.

40. MyPayrollHR and Mann knew that Cachet's system would rely on the information in the Cachet specifications file, causing Cachet's system to (1) transfer $19 million to accounts owned and controlled by Defendants and (2) automatically direct deposit funds in the accounts of

10

the employees of MyPayrollHR's employer-clients, just as MyPayrollHR and Mann indicated in the Cachet specifications.

41.     In completing the Cachet specifications batch files and making their representations, Defendants intended that Cachet rely upon the representations to induce Cachet's system to take the actions described above and indicated in the specifications.

42.     Given its relationship of more than 11 years with MyPayrollHR, Cachet reasonably relied on the representations made by MyPayrollHR and Mann in the Cachet specifications file, and Cachet was unaware of their falsity at the time the representations were made.

43.     Cachet has been harmed by the intentional misrepresentations made by MyPayrollHR and Mann.  Cachet would not have relied upon MyPayrollHR if the true facts and circumstances had been disclosed to Cachet.

44.     Cachet was harmed by the intentional misrepresentations made by MyPayrollHR and Mann, and suffered and continues to suffer damages in an amount to be proven at trial, but in no event less than $26 million.  Cachet's reliance on Defendants' intentional misrepresentations was a substantial factor in causing such harm.

45.     Moreover, because Defendants' conduct was willful, wanton, malicious, egregious, and done in conscious disregard of Cachet's rights, Cachet is entitled to an award of punitive damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Conversion
### (Against all Defendants)

46.     Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

47. Cachet has a possessory and/or beneficial interest in (1) the $19 million that Defendants, by its manipulation of the Cachet specifications, caused to be transferred from Cachet's settlement account to the MyPayrollHR and the Mann Entities and (2) the $7 million from MyPayrollHR's employer-clients that were supposed to be deposited into Cachet's settlement account, and used to pay the employers' employees, and are now in accounts owned or controlled by Defendants.

48. Without Cachet's permission, MyPayrollHR and Mann manipulated Cachet's specification file, causing (1) Cachet to transfer the $19 million to accounts owned and controlled by Defendants and (2) the $7 million of employers' funds to be deposited not in Cachet's settlement account but instead in accounts owned and controlled by Defendants.

49. The more than $26 million are currently in accounts owned and controlled by Defendants.

50. Defendants have no legal right to own or possess the funds. The funds instead are property of and belong to Cachet.

51. Defendants have denied Cachet access to and control over the funds.

52. Defendants' possession of and refusal to return the funds have deprived Cachet of funds necessary to reimburse Cachet for (1) the $19 million fraudulently transferred from Cachet's settlement account and (2) the $7 million that Cachet paid to the employees of MyPayrollHR's employer-clients, causing damages to Cachet in an amount to be proven at trial, but in no event less than $26 million.

53. Moreover, because Defendants' conduct was willful, wanton, malicious, egregious, and done in conscious disregard of Cachet's rights, Cachet is entitled to an award of punitive damages in an amount to be proven at trial.

18182852.2
234071-10001

## FOURTH CAUSE OF ACTION
## Unjust Enrichment
### (Against all Defendants)

54. Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

55. Defendants diverted more than $26 million to accounts owned and controlled by Defendants. Specifically, Defendants diverted the $19 million directly from Cachet, and the $7 million from its own employer-clients. The $19 million and the $7 million were diverted to various accounts owned and controlled by Defendants.

56. As a direct result of their diversion of funds Defendants have been unjustly enriched with the $19 million and the $7 million.

57. The $26 million now in the possession of Defendants belong to Cachet, and equity and good conscience require that these specific funds be turned over to Cachet as restitution to Cachet for transferring the $19 million to accounts controlled by Defendants and the $7 million to the accounts of the employees of MyPayrollHR's employer-clients, all as instructed in the Cachet specifications file.

58. Defendants are therefore entitled to a temporary restraining order, a preliminary injunction, a permanent injunction, and restitution of the $19 million and the $7 million that was directed by Defendants to the various accounts owned and controlled by Defendants.

59. Moreover, because Defendants' conduct was willful, wanton, malicious, egregious, and done in conscious disregard of Cachet's rights, Cachet is entitled to an award of punitive damages in an amount to be proven at trial.

18182852.2
234071-10001

# FIFTH CAUSE OF ACTION
## For Violation of 18 U.S.C. 1962(c) (RICO)
### (Against all Defendants)

60. Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

61. Cachet is informed and believes, and based thereon alleges, that Mann, MyPayrollHR, and the Mann Entities each violated the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962, et seq., Racketeer Influenced and Corrupt Organizations ("RICO"), in connection with a scheme devised, conducted and/or participated in by these Defendants; each of whom is associated with an unlawful enterprise dealing in interstate commerce; and each of whom conducted or participated, directly or indirectly, in that enterprise through a pattern of racketeering activity by committing mail fraud and/or wire fraud, as described herein.

62. Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

63. Cachet is informed and believes, and based thereon alleges, that Mann, MyPayrollHR, and the Mann Entities formed an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). This enterprise (the "MyPayrollHR-Mann Enterprise") was and is an association in fact enterprise, consisting Mann, MyPayrollHR, and the Mann Entities, who, on information and belief, continue to have a stable working relationship and delegation of duties among themselves, as well as a common purpose of defrauding Cachet to enrich themselves.

64. Cachet is informed and believes, and based thereon alleges, that the MyPayrollHR-Mann Enterprise has engaged in, and its activities affect, interstate commerce, including through the Defendants' use of electronic mail, and telephone and digital communications across state and country lines, and the misappropriation and subsequent use of Cachet's assets through their fraudulent scheme.

65. Cachet is informed and believes, and based thereon alleges, that each of the above-referenced Defendants was and is associated in the MyPayrollHR-Mann Enterprise and has conducted or participated, directly or indirectly, in the management and operation of the affairs of the enterprise through a pattern of activity unlawful under 18 U.S.C. § 1961(1) – namely, multiple, repeated, and continuous acts of wire fraud.

66. The Defendants' use of interstate wire facilities to perpetrate their fraudulent scheme against Cachet involved wire and telephonic communications in August and September 2019, as alleged above.  Some specific examples of predicate acts committed by Mann, MyPayrollHR, and the Mann Entities in furtherance of their fraudulent scheme against Cachet, and in violation of 18 U.S.C. § 1961(1), include, but are not limited to:

    a. In or around late-August or early-September 2019, Defendants used Cachet's ACH system (*i.e.,* wire communication) to steal the $19 million directly from Cachet.

    b. In or around late-August or early-September 2019, Defendants used Cachet's ACH system (i.e., wire communication) to steal the $7 million from MyPayrollHR's employer-clients and their employees.

    c. In or around late-August or early-September 2019, each of the Defendants, via ACH transactions, accepted the funds that were diverted from Cachet's account and the employers' accounts.

67. Cachet is informed and believes, and based thereon alleges, that the Defendants' fraudulent scheme against Cachet is part of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

68. The above alleged acts of racketeering by Defendants were not isolated.  Rather, these acts of racketeering are related because they had the same or similar purpose, result,

participants, victims, and methods of commission.  Further, the Defendants' acts of racketeering have been continuous, starting in August 2019 and continuing through the present.

69. Cachet is informed and believes, and based thereon alleges, that Defendants' wrongful conduct set forth above, represents an ongoing RICO enterprise, which projects into the future with a threat of repetition.

70. As a direct result of Defendants' violations of 18 U.S.C. § 1962(c) described above, Cachet has suffered substantial injury to their business and property, of at least $26 million, the exact amount to be proven at trial, which damages, according to proof, should be trebled pursuant to 18 U.S.C. § 1964(c).

71. Cachet is also entitled to an award of reasonable attorneys' fees and costs in this matter, pursuant to 18 U.S.C. § 1964(c).

## SIXTH CAUSE OF ACTION
### For violation of 18 U.S.C. § 1962(d) (RICO Conspiracy)
### (Against all Defendants)

72. Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

73. Cachet is informed and believes, and based thereon alleges, that in violation of 18 U.S.C. § 1962(d), Defendants conspired to violate 18 U.S.C. § 1962(c).  The conspiracy commenced at least as early as August 2019 and continues through the present.

74. Cachet is informed and believes, and based thereon alleges, that the object of the conspiracy was to (i) misappropriate Cachet's moneys for the Defendants' personal benefit, and (ii) attempt to convince Cachet (at least temporary) that Defendants did not divert or misappropriate Cachet's moneys for their own benefit through providing Cachet with false information regarding the transfers of money.

75. Cachet is informed and believes, and based thereon alleges, that Defendants each knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the MyPayrollHR-Mann Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1341 and 1343, in violation of 18 U.S.C. § 1962(c).

76. Cachet is informed and believes, and based thereon alleges, that each Defendant, whether individually or through an entity, objectively manifested, by words or acts, his or her agreement to the commission of the substantive RICO violations by at least one member of the conspiracy, and each Defendant committed at least one overt act in furtherance of the conspiracy.

77. As a direct result of the violations of 18 U.S.C. § 1962(d) committed by Defendants, herein described, Cachet has suffered substantial injury to their business and property, of at least $26 million, the exact amount to be proven at trial, which damages, according to proof, should be trebled pursuant to 18 U.S.C. § 1964(c).

78. Cachet is also entitled to an award of reasonable attorneys' fees and costs in this matter, pursuant to 18 U.S.C. § 1964(c).

79. In so conspiring with each other to commit the RICO violations alleged herein, Defendants, and each of them, are jointly and severally liable for the wrongful actions of each co-conspirator.

**WHEREFORE**, Cachet demands judgment in its favor and against Defendants, as follows:

 A. On the first cause of action, against MyPayrollHR for breach of contract, damages in an amount to be determined, but not less than $26 million, plus interest and cost thereon to the date of entry of judgment, as well as attorneys' fees.

 B. On the second cause of action, against MyPayrollHR and Mann for fraud, damages in an amount to be determined, but not less than $26 million, plus interest and cost thereon to the date of entry of judgment, together with punitive damages in an amount to be determined at trial;

 C. On the third cause of action, against all Defendants for conversion, damages in an amount to be determined, but not less than $26 million, plus interest thereon to the date of entry of judgment, together with exemplary damages in an amount to be determined at trial;

 D. On the fourth cause of action, against all Defendants for unjust enrichment, a temporary restraining order, a preliminary injunction, a permanent injunction, and restitution of the $19 million and the $7 million that was directed by Defendants to the various accounts owned and controlled by Defendants, plus interest thereon to the date of entry of judgment, together with punitive damages in an amount to be determined at trial;

 E. On the fifth cause of action, against all Defendants for violation of 18 U.S.C. 1962(c) (RICO), treble damages in an amount to be determined (pursuant to 18 U.S.C. § 1964(c)), plus interest thereon to the date of entry of judgment, together with and for reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 1964(c));

 F. On the sixth cause of action, against all Defendants for violation of 18 U.S.C. 1962(c) (RICO conspiracy), treble damages in an amount to be determined (pursuant to 18 U.S.C.

§ 1962(d)),  plus interest thereon to the date of entry of judgment, together with and for reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 1964(c));

   G. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: New York, New York
September 23, 2019

          LOEB & LOEB LLP

        By: */s/ Evan Farber*
          Daniel A. Platt (PHV forthcoming)
          Donald A. Miller (PHV forthcoming)
          Evan K. Farber (NDNY Bar No. 701310)
          Matthew C. Anderson (PHV forthcoming)
          345 Park Avenue
          New York, New York 10154
          (212) 407-4000

*Attorneys for Plaintiff Cachet Financial Service.*