# EXHIBIT 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
CACHET FINANCIAL SERVICES,                                          :
                                                                    :
                                    Plaintiff,                      :     **COMPLAINT**
                                                                    :
                                                                    :     DEMAND FOR JURY TRIAL
                           -against-                                :
                                                                    :     Case No. 1:19-CV-1181 (FJS/CFH)
MYPAYROLLHR, LLC; MICHAEL MANN;                                     :
VALUEWISE CORPORATION; ROSS PERSONNEL                              :
CONSULTANTS INC.; SOUTHWESTERN                                      :
PAYROLL SERVICES INC.; ESSQUE, INC. (D/B/A                         :
HEUTMAKER BUSINESS ADVISORS); AND DOES                             :
1-10,                                                               :
                                                                    :
                                    Defendants.                     :
--------------------------------------------------------------------X

      Plaintiff Cachet Financial Services ("Cachet"), by and through its attorneys, Loeb & Loeb

LLP, as and for its complaint, makes the following allegations against Defendants MyPayrollHR,

LLC ("MyPayrollHR"); Michael Mann ("Mann"); numerous companies owned or controlled by

Mann [*i.e.,* ValueWise Corporation; Essque, Inc.; Ross Personnel Consultants Inc.; and

Southwestern Payroll Services Inc., and Does 1-10 (collectively, the "Mann Entities")];

(MyPayrollHR, Mann, and the Mann Entities are referred to collectively as "Defendants"):

**NATURE OF ACTION**

      1.    This case is about a multi-million dollar fraudulent scheme perpetrated by

MyPayrollHR, Mann, the Mann Entities, and potentially others, which has not only damaged

Cachet, but by its ripple effect, has also disrupted the lives of thousands of people across the

country, including many citizens of New York.

      2.    Mann is the CEO of MyPayrollHR, which is a cloud-based payroll processing

company that, before September 4, 2019, served numerous employer-clients around the country.

3.      MyPayrollHR was a client of Cachet, and pursuant to their 11-year contractual relationship, MyPayrollHR used Cachet's patented ACH services to move funds electronically from the bank accounts of MyPayrollHR's employer-clients to Cachet's "settlement account," and then from the settlement account to the bank accounts of the employees of those employer-clients.

4.      In or around the end of August or the beginning of September 2019, MyPayrollHR and Mann surreptitiously and fraudulently manipulated Cachet's ACH specifications batch files – the instructions which dictate the direction, timing and flow of funds – to cause over $26 million to be transferred to numerous bank accounts that are, on information and belief, owned or controlled by the Mann and/or the Mann Entities.

5.      Defendants stole the $26 million in two sets of transactions. In the first set of transactions, MyPayrollHR and Mann manipulated the Cachet specifications to *appear to* transfer more than $19 million (the "$19 million")[1] from various accounts controlled by MyPayrollHR and some of the Mann Entities to Cachet's settlement account, and then immediately from Cachet's settlement account to various other accounts owned and controlled by the Mann Entities. However, those funds were never actually deposited into the settlement account.  Notwithstanding the fact that the funds were not in the account and available for ACH transfer, it appeared that they were in the account and Cachet transferred the $19 million to MyPayrollHR and the Mann Entities. When Cachet learned of the fraud and attempted to claw back the money from the various accounts owned and controlled by MyPayroll and the Mann Entities, Cachet received notices from the bank(s) that the accounts had been frozen.

---

[1]  The exact amount that Defendants stole from Cachet via entities-to-entities transfer is *more than* $19 million, but for ease of reading, the amount will be referred in this complaint as "the $19 million."

6.      In the second set of transactions, MyPayrollHR and Mann stole more than $7 million (the "$7 million")[2] from MyPayrollHR's employer-clients that should have been used to pay the employer-clients' employees.  MyPayrollHR and Mann also manipulated the Cachet specifications to divert those funds to MyPayrollHR's own accounts at Pioneer Bank.  Even though the employers' funds did not go to Cachet's settlement account, the manipulation of the batch file caused Cachet's account to automatically be charged with the amount of employees' payroll checks – *i.e.,* the $7 million. Once Cachet learned of the fraud, and the fact that the employers' funds were not credited to Cachet's settlement account, Cachet immediately reversed the direct deposits transmitted to the employees' accounts.  But Cachet then decided to make the employees whole – with its own money – even though Cachet was the party defrauded by MyPayrollHR, Mann, and the Mann Entities.  Despite the fact that the employers' funds never went to Cachet's settlement account, and instead went to Defendants' accounts, Cachet promptly authorized and instructed its bank to cancel Cachet's reversals of the direct deposits and thus allow its own funds to be distributed to the employees' accounts.

7.      Mann was recently arrested by the FBI, and appeared in this Court on September 23, 2019, before Magistrate Judge Daniel J. Stewart, on charges of bank fraud.  Case No. 1:19-MJ-602 (DJS).  According to the affidavit submitted by FBI Special Agent Matthew Wabby, Mann, in an interview with the FBI on September 10, 2019, "stated that he wished to accept responsibility for his conduct, and confess to a fraudulent scheme that he had been running for years."  Special Agent Wabby also stated the following in his affidavit:  "Mann stated that the payroll issue . . . was precipitated by his decision to route MyPayroll's clients' payroll payments to an account at Pioneer instead of directly to Cachet.  He did this in order to temporarily reduce

---

[2]  The exact amount that Defendants stole from MyPayrollHR's employer-clients is *more than* $7 million, but for ease of reading, the amount will be referred to in this complaint as "the $7 million."

the amount of money he owed to Pioneer. When Pioneer froze Mann's accounts, it also (inadvertently) stopped movement of MyPayroll's clients' payroll to Cachet."

8.  Defendants' illegal conduct has caused over $26 million of damages to Cachet.

## PARTIES

9.  Plaintiff Cachet is a California corporation with its principal place of business in Pasadena, California.

10.  Defendant MyPayrollHR, formerly known as Cloud Payroll LLC, is a Delaware limited liability company registered to conduct business in the State of New York with its principal place of business in Clifton Park, New York.

11.  Mann is a citizen of New York and resides in Northville, NY. Mann is also the CEO of MyPayrollHR, ValueWise, and Ross Consultants.

12.  Defendant ValueWise is a Delaware corporation registered to conduct business in the State of New York with its principal place of business in Clifton Park, New York.

13.  Heutmaker Business Advisors ("Heutmaker") is a d/b/a of Essque, Inc., which is a Minnesota corporation with its principal place of business in Bloomington, Minnesota.

14.  Ross Personnel Consultants Inc. (d/b/a Ross Consultants) is a Connecticut corporation with its principal place of business in Clifton Park, New York.

15.  Southwestern Payroll Services Inc. (d/b/a Southwestern Payroll) is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.

16.  The defendants sued as "Does 1 to 10" are the other "Mann Entities," not already identified and named above, to which MyPayrollHR and Mann transferred or caused to be transferred at least some portion of the $19 million and/or the $7 million. While Cachet has identified the d/b/a and bank account numbers for such defendants, it has not yet identified their

4

complete corporation information.  Once Cachet identifies such defendants, Cachet will determine whether to amend the complaint to add such defendants.

17.     Cachet is informed and believes, and based thereon alleges, that at all times herein mentioned, each defendant and Doe was the agent, servant and/or employee of each other defendant and Doe, and in connection with the conduct herein alleged, was acting within the course and scope of such agency, and that each Defendant and Doe ratified each and every act, omission and thing done by each and every other Defendant and Doe.

18.     Cachet is further informed and believes, and based thereon alleges, that Defendants have formed and engaged in a conspiracy, common enterprise and common course of conduct, the purpose of which was and is to engage in the wrongdoing alleged in this complaint.   The conspiracy, common enterprise and common course of conduct continue to the present, and Cachet has suffered damages resulting from Defendants' operation of their conspiracy, common enterprise and common course of conduct.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction of this action pursuant to 28 USC § 1332(a)(1) in that this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     Venue is proper in the Northern District of New York for several reasons:

a.      a substantial part of Defendants' illegal conduct occurred in this judicial district that gave rise to Cachet's claims (28 USC § 1391(b)(2));

b.      at least Defendants MyPayrollHR, ValueWise, Ross Consultants, and Mann are subject to the Court's personal jurisdiction with respect to this action (28 USC § 1391(b)(3)); and

18182852.2
234071-10001

      c.      the corporate defendants ValueWise and Ross Consultants are subject to the Court's personal jurisdiction with respect to this action since it "resides" in the Northern District (28 USC § 1391(d)).

## **FACTUAL ALLEGATIONS**

21.     Cachet is a national financial services company focused on ACH processing and related services for the payroll industry. Cachet contracts with payroll processors, such as MyPayrollHR, to process tens-of-billions of dollars annually in ACH transactions for tens-of-thousands of employers.

22.     MyPayrollHR is an outsource payroll processing company that contracts with employers to manage the employers' payroll. MyPayrollHR contracts with Cachet, which provides the capability to move funds electronically via ACH transactions, the mechanism necessary to withdraw funds from the bank accounts of MyPayrollHR's employer-clients and then deposit those funds directly into the bank accounts of the clients' employees.

23.     In late-August and/or early-September 2019, unbeknownst to Cachet at the time, MyPayrollHR and Mann illegally and fraudulently manipulated Cachet's specifications batch files to cause over $26 million to be routed to MyPayrollHR and the Mann Entities.

24.     MyPayrollHR and Mann manipulated Cachet's specifications batch files in two different ways. First, they fraudulently used Cachet's settlement account for non-payroll purposes in order to steal the $19 million directly from Cachet. More specifically, MyPayrollHR and Mann manipulated Cachet's specifications to make it appear as if the $19 million was being transferred from various entities, including MyPayrollHR, to Cachet's settlement account, and then the same $19 million was being transferred from Cachet's settlement account to other various entities. However, while the $19 million was never actually transferred to Cachet's settlement account, an

6

identical amount *was* transferred from Cachet's settlement account to accounts owned and controlled by MyPayrollHR and various Mann Entities, which, on information and belief, are maintained at Pioneer Bank, Bank of America, Key Bank, Wells Fargo and Axos Bank (f/k/a Bank of Internet).

25.    Second, MyPayrollHR and Mann manipulated Cachet's specifications to steal more than $7 million from its own employer-clients and their employees.  Specifically, MyPayrollHR and Mann altered account information in the Cachet specifications so that the $7 million of the employer-clients' funds were deposited not in Cachet's settlement account, but rather in bank accounts owned and controlled by MyPayrollHR and the Mann Entities, which, on information and belief, are maintained at Pioneer Bank, Bank of America, Key Bank, Wells Fargo, and Axos Bank (f/k/a Bank of Internet).

26.    Cachet learned for the first time shortly thereafter of the fraud and promptly (a) transmitted digital instructions to the accounts controlled by Defendants to reroute the funds to the settlement account (for both sets of fraudulent transactions generated by Defendants); and (b) authorized its bank to instruct the employees' banks to reverse the unfunded direct deposits that went into the employees' accounts.  Cachet is informed and believes that Pioneer Bank, Bank of America, Key Bank, Wells Fargo, and Axos Bank have since frozen some or all of the funds and therefore would not reroute the funds to the Cachet's settlement account.

27.    On September 3, 2019, a representative of Cachet called and spoke with a representative of MyPayrollHR and was informed Michael Mann was at Pioneer Bank working on having Pioneer Bank release the funds to Cachet.  A representative of Cachet called and spoke with Mann on September 4, 2019.  Mann said he would call Cachet back in a few minutes, but

7

never did and then disappeared. MyPayrollHR has since advised its clients that it has ceased operations.

28.     Thereafter, Cachet, through its bank, instructed all of the employees' banks to reject the reversals of the direct deposits and thereby allow the direct deposits to remain in the employees' accounts. Cachet thus funded the employees' accounts with its own money.

29.     Defendants' unlawful conduct has caused more than $26 million in damages to Cachet, in addition to attorneys' fees and expenses that Cachet has incurred and will incur as a result of the ripple effect of Defendants' actions.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (Against MyPayrollHR)

30.     Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

31.     Cachet and MyPayrollHR entered into an ACH settlement and processing services agreement, the most recent version of which is dated May 1, 2019 (the "Cachet-MyPayrollHR agreement").

32.     Cachet has complied with of its obligations under the Cachet-MyPayrollHR agreement.

33.     Pursuant to the Cachet-MyPayrollHR agreement, MyPayrollHR agreed, among other things:

        (a)     to use Cachet's ACH settlement and processing services only for payroll-related transactions, and not to use Cachet's services for non-payroll-related transactions;

        (b)     not to use Cachet's ACH settlement and processing services in a way that violates the laws of the United States;

8

(c)     not to allow unauthorized access to Cachet's ACH settlement and processing services;

(d)     to provide accurate information in Cachet's specifications batch files;

(e)     to pay Cachet for all credit entries directed by MyPayrollHR that were made by Cachet on MyPayrollHR's behalf.

34.     MyPayrollHR has breached the Cachet-MyPayrollHR agreement by

(a)     using Cachet's ACH settlement and processing services for non-payroll-related transactions by fraudulently moving funds from entities to entities;

(b)     violating U.S. law by stealing money from Cachet (using kiting) and from MyPayrollHR's employer-clients;

(c)     accessing and using Cachet's ACH settlement and processing services in an unauthorized manner, for non-payroll-related transactions and to steal money;

(d)     providing inaccurate information in Cachet's specifications batch files by manipulating the account number from Cachet's settlement account to accounts owned and controlled by Defendants; and

(e)     failing to pay Cachet for the more than $26 million of credit entries that were made by Cachet to the bank accounts of the employees of MyPayrollHR's employer-clients and to the bank accounts owned and controlled by MyPayrollHR and the Mann Entities.

35.     By reason of MyPayrollHR's wrongful conduct, Cachet has sustained damages in an amount to be determined at trial, but not less than $26 million, plus interest, as well as attorneys' fees (as provided in the Cachet-MyPayrollHR agreement) and any and all expenses incurred by Cachet to address the issues caused by MyPayrollHR's unlawful conduct.

18182852.2
234071-10001

## SECOND CAUSE OF ACTION

### Fraud

### (Against MyPayrollHR and Mann)

36.     Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

37.     By completing the Cachet specifications batch file, MyPayrollHR and Mann made two sets of representations to Cachet.  First, MyPayrollHR and Mann represented that (while Cachet's system was not supposed to be used to move funds from entities to other entities) the $19 million would be transferred from various entities, including MyPayrollHR, to Cachet's settlement account, and that the same $19 million would be transferred from the settlement account to various other entities.  Second, MyPayrollHR and Mann represented that MyPayrollHR's employer-clients would deposit the $7 million into Cachet's settlement account and the employees of those employer-clients would be paid the $7 million from Cachet's settlement account.

38.     Both sets of representations were false.  First, the $19 million was never actually transferred from the various entities to Cachet's settlement account (although $19 million was actually transferred from Cachet's settlement account to various entities).  Second, the $7 million of employer-clients' funds were never deposited in Cachet's settlement account, but instead were diverted to accounts owned and controlled by Defendants.

39.     MyPayrollHR and Mann, by their manipulation of the Cachet specifications batch files, either knew that their representations were false when they made them, or they made such representations recklessly and without regard for their truth.

40.     MyPayrollHR and Mann knew that Cachet's system would rely on the information in the Cachet specifications file, causing Cachet's system to (1) transfer $19 million to accounts owned and controlled by Defendants and (2) automatically direct deposit funds in the accounts of

18182852.2
234071-10001

the employees of MyPayrollHR's employer-clients, just as MyPayrollHR and Mann indicated in the Cachet specifications.

41.     In completing the Cachet specifications batch files and making their representations, Defendants intended that Cachet rely upon the representations to induce Cachet's system to take the actions described above and indicated in the specifications.

42.     Given its relationship of more than 11 years with MyPayrollHR, Cachet reasonably relied on the representations made by MyPayrollHR and Mann in the Cachet specifications file, and Cachet was unaware of their falsity at the time the representations were made.

43.     Cachet has been harmed by the intentional misrepresentations made by MyPayrollHR and Mann.  Cachet would not have relied upon MyPayrollHR if the true facts and circumstances had been disclosed to Cachet.

44.     Cachet was harmed by the intentional misrepresentations made by MyPayrollHR and Mann, and suffered and continues to suffer damages in an amount to be proven at trial, but in no event less than $26 million.  Cachet's reliance on Defendants' intentional misrepresentations was a substantial factor in causing such harm.

45.     Moreover, because Defendants' conduct was willful, wanton, malicious, egregious, and done in conscious disregard of Cachet's rights, Cachet is entitled to an award of punitive damages in an amount to be proven at trial.

### **THIRD CAUSE OF ACTION**
#### **Conversion**
#### **(Against all Defendants)**

46.     Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

18182852.2
234071-10001

47.     Cachet has a possessory and/or beneficial interest in (1) the $19 million that Defendants, by its manipulation of the Cachet specifications, caused to be transferred from Cachet's settlement account to the MyPayrollHR and the Mann Entities and (2) the $7 million from MyPayrollHR's employer-clients that were supposed to be deposited into Cachet's settlement account, and used to pay the employers' employees, and are now in accounts owned or controlled by Defendants.

48.     Without Cachet's permission, MyPayrollHR and Mann manipulated Cachet's specification file, causing (1) Cachet to transfer the $19 million to accounts owned and controlled by Defendants and (2) the $7 million of employers' funds to be deposited not in Cachet's settlement account but instead in accounts owned and controlled by Defendants.

49.     The more than $26 million are currently in accounts owned and controlled by Defendants.

50.     Defendants have no legal right to own or possess the funds.  The funds instead are property of and belong to Cachet.

51.     Defendants have denied Cachet access to and control over the funds.

52.     Defendants' possession of and refusal to return the funds have deprived Cachet of funds necessary to reimburse Cachet for (1) the $19 million fraudulently transferred from Cachet's settlement account and (2) the $7 million that Cachet paid to the employees of MyPayrollHR's employer-clients, causing damages to Cachet in an amount to be proven at trial, but in no event less than $26 million.

53.     Moreover, because Defendants' conduct was willful, wanton, malicious, egregious, and done in conscious disregard of Cachet's rights, Cachet is entitled to an award of punitive damages in an amount to be proven at trial.

18182852.2
234071-10001

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (Against all Defendants)

54.     Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

55.     Defendants diverted more than $26 million to accounts owned and controlled by Defendants.  Specifically, Defendants diverted the $19 million directly from Cachet, and the $7 million from its own employer-clients.  The $19 million and the $7 million were diverted to various accounts owned and controlled by Defendants.

56.     As a direct result of their diversion of funds Defendants have been unjustly enriched with the $19 million and the $7 million.

57.     The $26 million now in the possession of Defendants belong to Cachet, and equity and good conscience require that these specific funds be turned over to Cachet as restitution to Cachet for transferring the $19 million to accounts controlled by Defendants and the $7 million to the accounts of the employees of MyPayrollHR's employer-clients, all as instructed in the Cachet specifications file.

58.     Defendants are therefore entitled to a temporary restraining order, a preliminary injunction, a permanent injunction, and restitution of the $19 million and the $7 million that was directed by Defendants to the various accounts owned and controlled by Defendants.

59.     Moreover, because Defendants' conduct was willful, wanton, malicious, egregious, and done in conscious disregard of Cachet's rights, Cachet is entitled to an award of punitive damages in an amount to be proven at trial.

13

## FIFTH CAUSE OF ACTION
### For Violation of 18 U.S.C. 1962(c) (RICO)
### (Against all Defendants)

60.     Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

61.     Cachet is informed and believes, and based thereon alleges, that Mann, MyPayrollHR, and the Mann Entities each violated the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962, et seq., Racketeer Influenced and Corrupt Organizations ("RICO"), in connection with a scheme devised, conducted and/or participated in by these Defendants; each of whom is associated with an unlawful enterprise dealing in interstate commerce; and each of whom conducted or participated, directly or indirectly, in that enterprise through a pattern of racketeering activity by committing mail fraud and/or wire fraud, as described herein.

62.     Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

63.     Cachet is informed and believes, and based thereon alleges, that Mann, MyPayrollHR, and the Mann Entities formed an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  This enterprise (the "MyPayrollHR-Mann Enterprise") was and is an association in fact enterprise, consisting Mann, MyPayrollHR, and the Mann Entities, who, on information and belief, continue to have a stable working relationship and delegation of duties among themselves, as well as a common purpose of defrauding Cachet to enrich themselves.

64.     Cachet is informed and believes, and based thereon alleges, that the MyPayrollHR-Mann Enterprise has engaged in, and its activities affect, interstate commerce, including through the Defendants' use of electronic mail, and telephone and digital communications across state and country lines, and the misappropriation and subsequent use of Cachet's assets through their fraudulent scheme.

18182852.2
234071-10001

65.     Cachet is informed and believes, and based thereon alleges, that each of the above-referenced Defendants was and is associated in the MyPayrollHR-Mann Enterprise and has conducted or participated, directly or indirectly, in the management and operation of the affairs of the enterprise through a pattern of activity unlawful under 18 U.S.C. § 1961(1) – namely, multiple, repeated, and continuous acts of wire fraud.

66.     The Defendants' use of interstate wire facilities to perpetrate their fraudulent scheme against Cachet involved wire and telephonic communications in August and September 2019, as alleged above.   Some specific examples of predicate acts committed by Mann, MyPayrollHR, and the Mann Entities in furtherance of their fraudulent scheme against Cachet, and in violation of 18 U.S.C. § 1961(1), include, but are not limited to:

a.      In or around late-August or early-September 2019, Defendants used Cachet's ACH system (*i.e.,* wire communication) to steal the $19 million directly from Cachet.

b.      In or around late-August or early-September 2019, Defendants used Cachet's ACH system (i.e., wire communication) to steal the $7 million from MyPayrollHR's employer-clients and their employees.

c.      In or around late-August or early-September 2019, each of the Defendants, via ACH transactions, accepted the funds that were diverted from Cachet's account and the employers' accounts.

67.     Cachet is informed and believes, and based thereon alleges, that the Defendants' fraudulent scheme against Cachet is part of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

68.     The above alleged acts of racketeering by Defendants were not isolated.   Rather, these acts of racketeering are related because they had the same or similar purpose, result,

18182852.2
234071-10001

participants, victims, and methods of commission. Further, the Defendants' acts of racketeering have been continuous, starting in August 2019 and continuing through the present.

69. Cachet is informed and believes, and based thereon alleges, that Defendants' wrongful conduct set forth above, represents an ongoing RICO enterprise, which projects into the future with a threat of repetition.

70. As a direct result of Defendants' violations of 18 U.S.C. § 1962(c) described above, Cachet has suffered substantial injury to their business and property, of at least $26 million, the exact amount to be proven at trial, which damages, according to proof, should be trebled pursuant to 18 U.S.C. § 1964(c).

71. Cachet is also entitled to an award of reasonable attorneys' fees and costs in this matter, pursuant to 18 U.S.C. § 1964(c).

## SIXTH CAUSE OF ACTION
### For violation of 18 U.S.C. § 1962(d) (RICO Conspiracy)
### (Against all Defendants)

72. Cachet re-alleges and incorporates by reference the allegations of all of the preceding paragraphs as though fully set forth here.

73. Cachet is informed and believes, and based thereon alleges, that in violation of 18 U.S.C. § 1962(d), Defendants conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced at least as early as August 2019 and continues through the present.

74. Cachet is informed and believes, and based thereon alleges, that the object of the conspiracy was to (i) misappropriate Cachet's moneys for the Defendants' personal benefit, and (ii) attempt to convince Cachet (at least temporary) that Defendants did not divert or misappropriate Cachet's moneys for their own benefit through providing Cachet with false information regarding the transfers of money.

18182852.2
234071-10001

75.     Cachet is informed and believes, and based thereon alleges, that Defendants each knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the MyPayrollHR-Mann Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1341 and 1343, in violation of 18 U.S.C. § 1962(c).

76.     Cachet is informed and believes, and based thereon alleges, that each Defendant, whether individually or through an entity, objectively manifested, by words or acts, his or her agreement to the commission of the substantive RICO violations by at least one member of the conspiracy, and each Defendant committed at least one overt act in furtherance of the conspiracy.

77.     As a direct result of the violations of 18 U.S.C. § 1962(d) committed by Defendants, herein described, Cachet has suffered substantial injury to their business and property, of at least $26 million, the exact amount to be proven at trial, which damages, according to proof, should be trebled pursuant to 18 U.S.C. § 1964(c).

78.     Cachet is also entitled to an award of reasonable attorneys' fees and costs in this matter, pursuant to 18 U.S.C. § 1964(c).

79.     In so conspiring with each other to commit the RICO violations alleged herein, Defendants, and each of them, are jointly and severally liable for the wrongful actions of each co-conspirator.

**WHEREFORE**, Cachet demands judgment in its favor and against Defendants, as follows:

A. On the first cause of action, against MyPayrollHR for breach of contract, damages in an amount to be determined, but not less than $26 million, plus interest and cost thereon to the date of entry of judgment, as well as attorneys' fees.

B. On the second cause of action, against MyPayrollHR and Mann for fraud, damages in an amount to be determined, but not less than $26 million, plus interest and cost thereon to the date of entry of judgment, together with punitive damages in an amount to be determined at trial;

C. On the third cause of action, against all Defendants for conversion, damages in an amount to be determined, but not less than $26 million, plus interest thereon to the date of entry of judgment, together with exemplary damages in an amount to be determined at trial;

D. On the fourth cause of action, against all Defendants for unjust enrichment, a temporary restraining order, a preliminary injunction, a permanent injunction, and restitution of the $19 million and the $7 million that was directed by Defendants to the various accounts owned and controlled by Defendants, plus interest thereon to the date of entry of judgment, together with punitive damages in an amount to be determined at trial;

E. On the fifth cause of action, against all Defendants for violation of 18 U.S.C. 1962(c) (RICO), treble damages in an amount to be determined (pursuant to 18 U.S.C. § 1964(c)), plus interest thereon to the date of entry of judgment, together with and for reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 1964(c));

F. On the sixth cause of action, against all Defendants for violation of 18 U.S.C. 1962(c) (RICO conspiracy), treble damages in an amount to be determined (pursuant to 18 U.S.C.

§ 1962(d)),  plus interest thereon to the date of entry of judgment, together with and for reasonable attorneys' fees and costs (pursuant to 18 U.S.C. § 1964(c));

G.        Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: New York, New York
          September 23, 2019

LOEB & LOEB LLP

By:     _/s/ Evan Farber_
          Daniel A. Platt (PHV forthcoming)
          Donald A. Miller (PHV forthcoming)
          Evan K. Farber (NDNY Bar No. 701310)
          Matthew C. Anderson (PHV forthcoming)
          345 Park Avenue
          New York, New York 10154
          (212) 407-4000

          *Attorneys for Plaintiff Cachet Financial Service.*

19

JS-CAND 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CACHET FINANCIAL SERVICES, | MYPAYROLLHR, LLC (F/K/A CLOUD PAYROLL LLC), et al. |

| **(b)** County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* Saratoga County |
| Los Angeles County | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Loeb & Loeb LLP
345 Park Avenue, New York, NY 10154
Tel: (212) 407-4000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☒ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC § 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC § 157 | ☐ 376 Qui Tam (31 USC § 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | **LABOR** | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment Of Veteran's Benefits | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 720 Labor/Management Relations | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 740 Railway Labor Act | ☐ 835 Patent–Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 751 Family and Medical Leave Act | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle / ☒ 370 Other Fraud | ☐ 790 Other Labor Litigation | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | **IMMIGRATION** | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury -Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 462 Naturalization Application | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 465 Other Immigration Actions | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 440 Other Civil Rights / **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC § 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 445 Amer. w/Disabilities– Employment / ☐ 535 Death Penalty | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 446 Amer. w/Disabilities–Other / **OTHER:** | | | |
| ☐ 245 Tort Product Liability | ☐ 448 Education / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation–Transfer

☐ 8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)(1); 18 U.S.C. § 1962(c); 18 U.S.C. § 1962(d)

Brief description of cause:
Through a fraudulent scheme, Defendants stole $26 million from Plaintiff.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 26,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY *(See instructions):*

JUDGE

DOCKET NUMBER

DATE September 23, 2019

SIGNATURE OF ATTORNEY OF RECORD /s/ Evan K. Farber

## FOR OFFICE USE ONLY

RECEIPT #    AMOUNT $400.00    APPLYING IFP    JUDGE FJS    MAG. JUDGE CFH

ANYNDC-4881073

Case No. 1:19-CV-1181

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

   (1) <u>United States plaintiff</u>. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

   (2) <u>United States defendant</u>. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

   (3) <u>Federal question</u>. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

   (4) <u>Diversity of citizenship</u>. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.

   (1) <u>Original Proceedings</u>. Cases originating in the United States district courts.

   (2) <u>Removed from State Court</u>. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

   (3) <u>Remanded from Appellate Court</u>. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

   (4) <u>Reinstated or Reopened</u>. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

   (5) <u>Transferred from Another District</u>. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

   (6) <u>Multidistrict Litigation Transfer</u>. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

   (8) <u>Multidistrict Litigation Direct File</u>. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

   <u>Please note that there is no Origin Code 7</u>. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** <u>Example</u>: U.S. Civil Statute: 47 USC § 553. <u>Brief Description</u>: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** <u>Class Action</u>. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

   <u>Demand</u>. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

   <u>Jury Demand</u>. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.** **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.

